947 P.2d 700 (1997)
133 Wash.2d 541
STATE of Washington, Petitioner,
v.
Leslie W. BERLIN, Respondent.
No. 63891-8.
Supreme Court of Washington, En Banc.
Argued October 9, 1996.
Decided November 20, 1997.
As Modified December 2, 1997.
*701 H. Steward Menefee, Grays Harbor County Prosecutor, Gerald R. Fuller, Deputy County Prosecutor, Montesano, for Petitioner.
Thomas Copland, Aberdeen, for Respondent.
JOHNSON, Justice.
Once again, we are asked to interpret RCW 10.61.006, which requires us to revisit our decision in State v. Lucky, 128 Wash.2d 727, 912 P.2d 483 (1996). This case, along with its companion case, State v. Warden, 133 Wash.2d 559, 947 P.2d 708 (1997), presents the issue of whether jury instructions may be given for manslaughter when a defendant is charged with both felony murder and intentional or premeditated murder. We hold manslaughter is a lesser included offense of intentional or premeditated murder in this case. The State is not required to elect between the alternative means of committing second degree murder. However, the jury must be instructed that manslaughter is a lesser included offense of intentional murder only.
In this case, it is the State that argues the manslaughter instructions given at trial were correct, and asks us to overrule our decision in Lucky. In Warden, the companion case, it is the Defendant who sought manslaughter instructions and asks us to overrule Lucky. We take this opportunity to reaffirm and clarify our longstanding interpretation of when a lesser included offense instruction is available and, to the extent our opinion in Lucky is inconsistent with this opinion, it is expressly overruled.
Here, the Court of Appeals reversed Defendant's manslaughter conviction, holding manslaughter is not a lesser included offense of second degree murder and, therefore, no instruction for manslaughter may be given when a defendant is charged with second degree murder by the alternative means of intentional murder and felony murder. See State v. Berlin, 80 Wash.App. 734, 911 P.2d 414 (1996). We reverse the Court of Appeals and affirm the trial court's conviction.

I
Under the Washington Constitution, the accused in a criminal trial has the right to be informed of the nature and cause of the offense against which he or she must defend at trial. Const. art. I, § 22 (amend.10). Generally, a defendant can be tried and convicted only of crimes with which he or she is charged. State v. Irizarry, 111 Wash.2d 591, 592, 763 P.2d 432 (1988). However, at common law, a jury was permitted to find a defendant guilty of a lesser offense necessarily included in the offense charged. Beck v. Alabama, 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (1980).
This rule originally developed as an aid to the prosecution when the evidence introduced at trial failed to establish an element of the crime charged. Beck, 447 U.S. at 633, 100 S.Ct. at 2387. Thus, the rule gave the prosecution the flexibility to instruct the jury consistent with the evidence actually presented. The rule also benefited the defendant by providing a third alternative to either conviction for the offense charged or acquittal. Beck, 447 U.S. at 633, 100 S.Ct. at 2387. Thus, the rule allowed the defendant to instruct the jury on an alternative theory of the case, a lesser crime than that charged by the State.
Washington codified this common law rule at RCW 10.61.006. The statute provides: "In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged in the indictment or information." Our lesser included statute in *702 some form dates back to its enactment by the Legislature of the Washington Territory in 1854. Wash. Terr. § 123, at 20 (1854).
As early as 1894, we interpreted this statute to include the constitutional notice requirement. State v. Ackles, 8 Wash. 462, 464-65, 36 P. 597 (1894). In Ackles, we found that assault with a deadly weapon was not a lesser included offense of assault to commit murder because assault with a deadly weapon included an additional elementthat it be committed without considerable provocation or that it be the impulse of a willful, abandoned and malignant heart. Ackles, 8 Wash. at 465, 36 P. 597. The information there did not set forth these additional elements, nor were these elements included in the statutory definition of the greater offense; therefore, the defendant could not be convicted of the lesser offense. Ackles, 8 Wash. at 464-65, 36 P. 597. This analysis, while not explicitly stating our modern test for lesser included offenses, begins our history of looking to the elements of the statutory offenses as charged. Because the defendant must have notice of the offense of which he or she is charged, the elements of any lesser included offense must necessarily be included in the elements of the offense as charged. A defendant thus implicitly receives constitutionally sufficient notice.
Our modern interpretation of RCW 10.61.006 is set forth in State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978). In Workman, we explicitly established a two-part test to serve as the basis for our lesser included analysis. First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed. Workman, 90 Wash.2d at 447-48, 584 P.2d 382. We refer to the first prong of the test as the "legal prong" and the second prong as the "factual prong." This has been the test for lesser included offenses and will continue to be the test for lesser included offenses.[1]
The Workman test incorporates the constitutional requirement of notice into its legal prong. See Ackles, 8 Wash. at 464, 36 P. 597. Into its factual prong, it incorporates the rule that each side may have instructions embodying its theory of the case if there is evidence to support that theory. It would be error to give an instruction not supported by the evidence. State v. Benn, 120 Wash.2d 631, 654, 845 P.2d 289 (1993). We have explained the factual prong of Workman by stating:
It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.
State v. Fowler, 114 Wash.2d 59, 67, 785 P.2d 808 (1990) (citing State v. Rodriguez, 48 Wash.App. 815, 820, 740 P.2d 904 (1987)).
In Lucky, we announced the Workman rule had been replaced with a new rule drawn from State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991) and State v. Davis, 121 Wash.2d 1, 846 P.2d 527 (1993). We stated:
[I]f, when viewed from a perspective where only the statutory elements are considered, it is possible to commit the "greater offense" without necessarily committing the purported lesser offense, an instruction on the lesser offense is not warranted. The logical consequence of this rule is that whenever there are alternative means of committing a "greater" crime, there can be no lesser included offense unless the alternative means each overlap to the extent that they are not mutually exclusive.
Lucky, 128 Wash.2d at 735, 912 P.2d 483.
In Lucky, the defendant was charged with second degree assault, committed with a deadly weapon, under RCW 9A.36.021(1). The defendant sought a jury instruction for the offense of unlawful display of a weapon under RCW 9.41.270(1). Lucky argued the *703 legal prong of the Workman test was met for the offense of unlawful display of a weapon because all of the elements of the unlawful display of a weapon charge are necessary elements of assault in the second degree committed with a deadly weapon. The State argued it was not a lesser included offense because it is possible to commit second degree assault, under RCW 9A.36.021, without displaying a deadly weapon.
We looked to our decisions in Curran and Davis, and interpreted them as requiring us to look to "the elements of the pertinent charged offenses as they appeared in the context of the broad statutory perspective, and not in the more narrow perspective of the offenses as prosecuted." Lucky, 128 Wash.2d at 734, 912 P.2d 483. In other words, we interpreted our own case law to require us to look to the broad statutory elements of second degree assault, rather than second degree assault, committed with a deadly weapon. Because Lucky failed to convince us that the rule established by this court in Curran and Davis was either incorrect or harmful, we ruled in favor of the State's analysis. Stare decisis requires a clear showing that an established rule is incorrect and harmful before it is abandoned. Lucky, 128 Wash.2d at 735, 912 P.2d 483.
However, we now find our decision in Lucky both incorrect and harmful. First, our decision in Lucky would virtually eliminate the Legislature's codification of a common law rule. This goes against our basic rule of statutory construction to avoid rendering meaningless any provision of a statute. In re Estate of O'Brien, 109 Wash.2d 913, 918, 749 P.2d 154, 81 A.L.R.4th 1111 (1988). Second, the decision is incorrect because it effectively overruled cases without the requisite showings of incorrectness and harmfulness. Third, the decision is harmful because the lesser included doctrine was appropriately and fairly set forth under the Workman test. Fourth, the decision is harmful because the Lucky rule is inequitable in that it precludes a lesser included offense instruction whenever a crime may be statutorily committed by alternative means. A lesser offense will seldom satisfy every statutory alternative means of committing the greater offense. As these companion cases so aptly illustrate, an inequity may arise for either the prosecution or the defense.
A lesser included instruction is available to both the prosecution and the defense, the constitutional requirement of notice is incorporated into the Workman test, and the test allows both parties to effectively argue their theory of the case. Only when the lesser included analysis is applied to the offenses as charged and prosecuted, rather than to the offenses as they broadly appear in statute, can both the requirements of constitutional notice and the ability to argue a theory of the case be met. This is fair to both the prosecution and the defense.
We now recognize an inconsistency with our decision in Lucky. In Lucky, it was never shown that the Workman analysis is incorrect or harmful. We recognized the rule of stare decisis without fully analyzing why the Workman interpretation had failed. Noting the irony of our current position, we nevertheless retreat to reaffirming the lesser included rule as laid forth in Workman, prior to our discussions in Curran, Davis, and Lucky. To establish that an offense is a lesser included offense, the rule is: first, each of the elements of the lesser offense must be a necessary element of the offense charged; second, the evidence in the case must support an inference that the lesser crime was committed. Workman, 90 Wash.2d at 447-48, 584 P.2d 382. To the extent Lucky is inconsistent with Workman, it is expressly overruled.

II
We turn now to the facts of the case at hand and proceed to an analysis of the issue under Workman.

FACTS
On August 14, 1993, after she heard what sounded like a shot in her trailer home, Robert Kuehny's girlfriend ran out to the kitchen/living room area and found Defendant Leslie Berlin holding a shotgun, standing over his dead friend Robert Kuehny. *704 The two men had been drinking heavily that night.
The State charged Berlin with second degree murder by the alternative means of intentional murder, in violation of RCW 9A.32.050(1)(a), and felony murder with assault in the second degree as the underlying felony, in violation of RCW 9A.32.050(1)(b). Berlin moved to compel the State to elect between the alternative means on the basis that second degree murder and second degree felony murder are two separate crimes, rather than alternative means of the same crime. The trial court denied the motion. The court instructed the jury on the elements of first and second degree manslaughter as lesser included crimes of second degree murder and Berlin excepted to the instructions. The jury found Berlin not guilty of second degree murder, but guilty of first degree manslaughter.
The Court of Appeals "reluctantly concluded," based on recent decisions of this court, that manslaughter is not a lesser included offense of second degree murder. See Berlin, 80 Wash.App. at 735-36, 911 P.2d 414. The State was therefore not entitled to the instruction, and the Court of Appeals reversed Berlin's manslaughter conviction. See Berlin, 80 Wash.App. at 739-40, 911 P.2d 414; see also Lucky, 128 Wash.2d at 735-36, 912 P.2d 483. The State petitioned this court for review and we accepted the case as a companion case to State v. Warden, 133 Wash.2d 559, 947 P.2d 708.
We now turn to a Workman analysis of the case at hand. The rule we employ to determine whether a lesser included instruction should be given is as follows: "First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed." Workman, 90 Wash.2d at 447-48, 584 P.2d 382 (emphasis added and citations omitted). We emphasize that both the statutory language of RCW 10.61.006 and the language of Workman necessitate that we examine the elements of the offense charged.
The offenses charged in this case are second degree felony murder and second degree intentional murder. We have previously held that neither first nor second degree manslaughter are lesser included offenses of second degree felony murder. Davis, 121 Wash.2d at 6, 846 P.2d 527. We note that our result in Davis rested, in part, on State v. Dennison, 115 Wash.2d 609, 801 P.2d 193 (1990) (holding first and second degree manslaughter are not lesser included offenses to first degree felony murder) and State v. Frazier, 99 Wash.2d 180, 661 P.2d 126 (1983) (holding manslaughter is not a lesser included offense to first degree felony murder). We affirm the result we reached in Davis. We, therefore, turn to the question of whether first or second degree manslaughter are lesser included offenses of second degree intentional murder.
To begin, we note we have previously held that manslaughter is a lesser included offense of intentional murder. State v. Jones, 95 Wash.2d 616, 628 P.2d 472 (1981); State v. Foley, 174 Wash. 575, 25 P.2d 565 (1933). We proceed, however, to analyze this issue under Workman. Under the legal prong of the Workman test, each of the elements of the lesser offense must be a necessary element of the offense charged. The crime charged in this case is second degree intentional murder. The elements of second degree intentional murder are that the defendant intends to cause the death of another person, but without premeditation, and that the defendant causes the death.
The elements of manslaughter in the first degree[2] are that the defendant recklessly causes the death of another person. RCW 9A.32.060(1)(a). The elements of manslaughter in the second degree are that the defendant, with criminal negligence, causes the *705 death of another person. RCW 9A.32.070. The states of mind of recklessness and criminal negligence are necessary elements of the greater crime of second degree murder.
When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly. When recklessness suffices to establish an element, such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.
RCW 9A.08.010(2). We find the legal prong of the Workman test is satisfied. We hold first and second degree manslaughter are lesser included offenses of second degree intentional murder and instructions should be given to a jury when the facts support such an instruction.
To satisfy the factual prong of Workman, the evidence must support an inference that manslaughter was committed. We must determine whether the evidence presented affirmatively established either first or second degree manslaughter. If the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater, a lesser included offense instruction should be given. See Beck v. Alabama, 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980). Here, ample evidence was offered of Berlin's drinking to the point of potentially impairing his ability to form the requisite intent to kill. Berlin himself testified the gun discharged accidentally while he and Kuehny struggled. The State requested the manslaughter instruction, which supported the Defendant's theory of the case. We find the factual prong of Workman is satisfied here. The trial court did not err in giving the instructions on manslaughter.

III
Berlin also argues the trial court should have compelled the State to elect between the alternative means of committing second degree murder when the lesser included instruction was requested. Berlin asserts that when proof of one crime automatically includes proof of another crime, to charge and try a defendant for both violates double jeopardy. Berlin reasons that, while manslaughter instructions may be given for a singular intentional murder charge, the same is not true for a felony murder charge. Therefore, Berlin asserts, felony murder and intentional murder cannot be alternative means of committing the same crime for charging purposes and must, instead, be defined as separate crimes. We do not agree.
RCW 9A.32.050 defines second degree murder:
(1) A person is guilty of murder in the second degree when:
(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or
(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants....
As the Court of Appeals correctly pointed out, we have previously put forth factors to consider when determining whether the Legislature intended to define a single crime that may be committed by different means or whether it intended to define two crimes. These factors are: (1) the title of the act; (2) whether there is a readily perceivable connection between the various acts set forth; (3) whether the acts are consistent with and not repugnant to each other; and (4) whether the acts may inhere in the same transaction. State v. Arndt, 87 Wash.2d 374, 379, 553 P.2d 1328 (1976).
The Court of Appeals applied these factors to second degree murder in State v. Russell, 33 Wash.App. 579, 657 P.2d 338 (1983), rev'd in part on other grounds by, 101 Wash.2d 349, 352, 678 P.2d 332 (1984), and found the Legislature intended to define a single crime, which can be committed by alternative means. The court stated:
The Legislature placed both RCW 9A.32.050(1)(a) and (b) under the title *706 "Murder in the Second Degree." Laws of 1975, 1st Ex.Sess., ch. 260, § 9A.32.050, p. 834. The readily perceivable connection between the acts set forth is a common object: causing the death of another person. The methods of committing second degree murder are not repugnant to each other; proof of an offense under one subsection does not disprove an offense under the other subsection. Therefore, it is immaterial that RCW 9A.32.050(1)(a) and (b) contain different elements. The prohibited acts may inhere in the same transaction....
Russell, 33 Wash.App. at 586, 657 P.2d 338. We expressly adopt the reasoning of the Court of Appeals and hold that second degree intentional murder and second degree felony murder are alternative means of committing the crime of second degree murder. Therefore, the State is not required to elect between the alternative means of committing second degree murder.
The trial court correctly instructed the jury on first and second degree manslaughter. We reverse the Court of Appeals and affirm the conviction for first degree manslaughter.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN and SANDERS, JJ., concur.
ALEXANDER, Justice (dissenting).
On March 7, 1996, this court issued its opinion in State v. Lucky, 128 Wash.2d 727, 912 P.2d 483 (1996). Seven justices of this court signed the majority opinion in Lucky. All but one of those seven justices continue to serve on this court. Today, four of the six remaining justices who signed the majority opinion in Lucky completely reverse the position that they endorsed a little more than a year ago. Because in doing so the present majority gives insufficient deference to the important principle of stare decisis, I dissent.
The majority here pays what I can only describe as lip service to the principle of stare decisis. It indicates that the Lucky decision is "incorrect and harmful" and thus in need of overturning. Majority op. at 703. The majority reaches that decision by relying on substantially the same arguments that the dissent advanced against Lucky. What has occurred in a year and one-half that makes these previously rejected arguments so persuasive now? The majority points to no new reasons for adopting the reasoning we overwhelmingly rejected when we decided Lucky.
It is worth noting that our decision in Lucky did not just fall from the sky one day. Lucky followed our earlier decisions in State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991) and State v. Davis, 121 Wash.2d 1, 846 P.2d 527 (1993). The present majority acknowledges this stating that Lucky only reviewed whether or not the rule established by this court in Curran and Davis was either incorrect or harmful. Majority op. at 703. However, it then criticizes Lucky for not having undergone the additional "incorrect or harmful" analysis necessary to overrule State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978). Majority op. at 703. The majority's criticism is unfounded and unwarranted. There was simply no reason for the majority in Lucky to have undertaken such an analysis due to the fact that Lucky did not overrule Workman.
The majority in Lucky clearly stated that Curran and Davis, not Lucky, rejected the Workman view and established a new rule:
The dissent and Lucky fail to convince us that the new rule established in [Curran and Davis] is either incorrect or harmful. We continue, therefore, to adhere to the rule we set forth in Curran and Davis: if, when viewed from a perspective where only the statutory elements are considered, it is possible to commit the "greater offense" without necessarily committing the purported lesser offense, an instruction on the lesser offense is not warranted.
Lucky, 128 Wash.2d at 735, 912 P.2d 483 (citation omitted). Therefore, any analysis of whether Workman was incorrect or harmful would have been unnecessary dicta in Lucky. Unlike today's decision, Lucky did not hastily overrule precedent. Lucky simply relied upon prior case law. See Davis, 121 Wash.2d at 4, 846 P.2d 527; Curran, 116 Wash.2d at 183, 804 P.2d 558; State v. Ferguson, 76 Wash.App. 560, 886 P.2d 1164 (1995); State v. Hurchalla, 75 Wash.App. 417, 877 P.2d *707 1293 (1994), review granted, 125 Wash.2d 1020, 890 P.2d 463 (1995); City of Seattle v. Wilkins, 72 Wash.App. 753, 865 P.2d 580 (1994). Finally, by overturning Lucky the majority also tacitly overturns the series of cases upon which Lucky relied.
The majority's decision is to me inexplicable and a major blow to a grand tradition of American jurisprudence that precedent should not be departed from unless considerations that the court was unaware of at the time the court made its ruling now dictate it. Surely the majority could not seriously argue that in the last year "facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification." Planned Parenthood v. Casey, 505 U.S. 833, 855, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992). Stare decisis "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact." Vasquez v. Hillery, 474 U.S. 254, 265-66, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986). By reversing Lucky so soon after it was decided, we unfortunately suggest that the law, far from consisting of "bedrock principles," is instead written in sands that shift "subject to incautious action or the whims of current holders of judicial office." In re Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970).
TALMADGE, Justice (dissenting).
I concur in Justice Alexander's concern about the majority's refusal to follow the principle of stare decisis. This Court's jurisprudence should not lurch from one policy pronouncement to the next, with no firm roots in the constitution, statutes, or decisions of this Court.
I write separately to emphasize the underlying policy rationale for State v. Lucky, 128 Wash.2d 727, 912 P.2d 483 (1996), and why the Court should follow it. First, in discussing the "legal prong" of the two-part test for lesser included offenses set forth in State v. Workman, 90 Wash.2d 443, 584 P.2d 382 (1978), we based our analysis in Lucky on our decisions in State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991), and State v. Davis, 121 Wash.2d 1, 846 P.2d 527 (1993), which strongly indicated courts must look to the statutory elements of all of the alternative means of committing the crime to determine if an offense is necessarily included within the elements of the other offense. See Schmuck v. United States, 489 U.S. 705, 716-21, 109 S.Ct. 1443, 1453, 103 L.Ed.2d 734, reh'g denied, 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989) (federal courts follow strict statutory analysis in determining lesser included offenses as in Lucky).
This analysis of the legal prong of Workman provides for greater certainty and predictability in the trial process. Indeed, the United States Supreme Court has abandoned any factual analysis as is required under the legal prong of the Workman test. As the United States Supreme Court has noted, using a strict statutory analysis (referred to by that Court as the "elements test") to determine lesser included offenses promotes more predictability and certainty. A textual comparison of statutes, which does not rely on inferences that may be drawn from evidence introduced at trial, allows both sides to know in advance what jury instructions will be available and to plan their trial strategies accordingly. It also promotes judicial economy by providing a clearer rule of decision and by permitting appellate courts to decide whether jury instructions were wrongly refused without reviewing the entire evidentiary record for nuances of inference. Schmuck, 489 U.S. at 720-21, 109 S.Ct. at 1452-53.
Second, the Court's interpretation of the statute in Lucky, Curran, and Davis, compels prosecuting attorneys to be more precise in their charging decisions. A judicial interpretation of RCW 10.61.006 that permits prosecuting authorities to charge very generally and allows juries to find lesser included offenses as an alternative to the charging decision of the prosecuting authority is an invitation to uncertainty, sloppy charging practices and possibly the over-charging of defendants in criminal cases. This concern was a thread through this Court's analysis in Lucky, Curran, and Davis.
*708 The Sentencing Reform Act of 1981 requires prosecuting attorneys to develop charging standards that are precise:
Selection of Charges/Degree of Charge
(1) The prosecutor should file charges which adequately describe the nature of defendant's conduct. Other offenses may be charged only if they are necessary to ensure that the charges:
(a) Will significantly enhance the strength of the state's case at trial; or
(b) Will result in restitution to all victims.
(2) The prosecutor should not overcharge to obtain a guilty plea. Overcharging includes:
(a) Charging a higher degree;
(b) Charging additional counts.
This standard is intended to direct prosecutors to charge those crimes which demonstrate the nature and seriousness of a defendant's criminal conduct, but to decline to charge crimes which are not necessary to such an indication. Crimes which do not merge as a matter of law, but which arise from the same course of conduct, do not all have to be charged.
RCW 9.94A.440. Prosecuting authorities should be required to make charging decisions as narrowly tailored to the particular facts of the case as is possible.
Finally, the question of whether a crime is a lesser included offense is purely an issue of statutory construction. See RCW 10.61.006 (lesser included offense). After Lucky, the Legislature fully enjoyed the opportunity to amend the statute to alter our construction of it. Bills were introduced in the 1997 Legislature to amend RCW 10.61.006 to change the outcome of Lucky. See Washington State Legislative Digest and History of Bills, Edition No. 2, 1997 Regular Session, SB 5444 at 179, HB 1331 at 602. That legislation did not pass. Alternatively, the Legislature could have amended statutes such as RCW 9A.36.031 (third degree assault) to carefully delineate lesser included offenses. The Legislature did not do this.
The failure of the Legislature to amend a statute to change the statute's judicial construction is reflective of legislative acquiescence in the Court's interpretation. See Buchanan v. International Bhd. of Teamsters, 94 Wash.2d 508, 511, 617 P.2d 1004, 1006 (1980) (failure of the Legislature to amend a statute after this Court renders a decision interpreting such statute indicates it was and is the policy of the Legislature to concur in that result). See also Manor v. Nestle Food Co., 131 Wash.2d 439, 446 n. 2, 932 P.2d 628 (1997) (Legislature's failure to amend a statute interpreted by administrative regulation constitutes legislative acquiescence in the agency's interpretation of the statute). Lucky correctly interpreted the statute in question.
There are strong policy reasons for adhering to the line of cases commencing with Curran and ending with Lucky. We should not abandon this most recent statutory interpretation without exceedingly good justification. I see no such rationale articulated in the majority's opinion, and for that reason, I would adhere to the statutory analysis set forth in Lucky.
NOTES
[1] We have also stated the Workman test as: "A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime." State v. Frazier, 99 Wash.2d 180, 191, 661 P.2d 126 (1983) (citation omitted) (quoting State v. Roybal, 82 Wash.2d 577, 583, 512 P.2d 718 (1973)).
[2] We note that when we refer to the lesser offense, we refer to the lesser offense as requested. All the statutory alternatives of the requested lesser offense are not a part of the Workman analysis. For instance, first degree manslaughter may be committed by (a) recklessly causing the death of another person; or (b) intentionally and unlawfully killing an unborn quick child by inflicting any injury upon the mother of such child. RCW 9A.32.060. The statutory alternative involved in the analysis in the case at hand is recklessly causing the death of another person. Therefore, the elements of the second alternative need not be examined.