IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32091-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROGELIO DELGADO RODRIGUEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Rogelio Rodriguez appeals his six convictions arising from a driving incident, arguing that the trial court erred in denying his request for a lesser included offense instruction and by answering a question from the jury. We affirm.

## FACTS

Mr. Rodriguez was called to the attention of Franklin County law enforcement authorities after he used his car to batter through a gate and drive onto the property of Jesus Arteaga. The vehicle became high centered on the property. Mr. Arteaga found Mr. Rodriguez in the driver's seat, shouting and playing music loudly with the sunroof open.

When the first responding officer, Deputy Sheriff George Rapp, approached the car, Mr. Rodriguez stood up through the sunroof and pointed a silver object at the deputy. Rapp believed it to be a gun and warned Mr. Arteaga to stay back. Rodriguez yelled obscenities towards the officer and told him to "shoot me." A second officer, Sergeant Pfeiffer, arrived shortly thereafter and the two men approached the car. Mr. Rodriguez locked it up, ignored their commands to show his hands, and refused to exit the car. When Deputy Rapp began to kick out the car window, Mr. Rodriguez opened the door and fled.

The deputies pursued him nearly one half mile before tackling him. He was cussing, kicking, singing, and sweating profusely. Rapp believed he was under the influence of a drug. Mr. Rodriguez's blood tested positive for amphetamines and cannabinoids.

Mr. Rodriguez was charged with second degree assault while armed with a firearm, second degree unlawful possession of a firearm, second degree possession of stolen property, second degree taking a motor vehicle without permission, unlawful possession of a short-barreled shotgun or rifle, and driving under the influence. Mr. Rodriguez had a prior adult Oregon conviction for robbery and a local juvenile adjudication for second degree malicious mischief.

The defense presented evidence from psychologist Stephen Rubin that Rodriguez had an antisocial personality disorder as well as a polysubstance dependence and abuse

2

disorder defense. While the trial court gave a jury instruction on diminished capacity, it declined a defense request to give an instruction on the lesser included offense (to second degree assault) of unlawful display of a weapon. The court reasoned that the evidence did not affirmatively show that only the crime of unlawful display had been committed.

The court's instructions on unlawful possession of a firearm in the second degree required the jury to find that Mr. Rodriguez had previously been adjudicated guilty of a felony as a juvenile. Clerk's Papers (CP) at 44, 46. During deliberations, the jury sent out the following inquiry:

> Was Rogelio convicted of a felony as a juvenile? The report does not explicitly say the charges were considered a felony.

CP at 24. The court responded, "Yes." There is no other record concerning the jury communication.

The jury rejected the diminished capacity claim and found Mr. Rodriguez guilty as charged on all six counts. He timely appealed to this court.

## ANALYSIS

Mr. Rodriguez argues that the court erred in failing to give the unlawful display instruction and by answering the jury inquiry. We address each argument in turn.

*Lesser Included Offense*

Mr. Rodriguez argues that there was conflicting evidence concerning his intent, so the court should have instructed the jury on unlawful display of a weapon as an included

3

offense of second degree assault. The trial court correctly determined that the evidentiary requisites for a lesser included offense were not satisfied.

By statute, either party in a criminal case is entitled to an instruction on a lesser included offense in appropriate circumstances. RCW 10.61.006.[1] In order to instruct on an included offense, the crime actually must be an included offense and there must be a factual basis for believing that the lesser crime was committed. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). These are known as the "legal" and "factual" prongs. *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997).

The factual prong is satisfied when there is affirmative evidence showing that only the lesser crime actually was committed. *State v. Speece*, 115 Wn.2d 360, 362-63, 798 P.2d 294 (1990); *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990). The factual prong is not established merely by the fact that the jury might disregard some of the evidence in the case. "Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given." *Fowler*, 114 Wn.2d at 67.

The parties do not dispute that unlawful display of a weapon legally is an included offense of second degree assault with a deadly weapon; *Fowler* has answered that

---

[1] Statutes also provide that parties are entitled to instructions on inferior degree offenses and attempted crimes. RCW 10.61.003; RCW 10.61.010.

4

question. *Id.* The question remaining is whether there was a factual basis for believing that only display of a weapon was committed.

In part, RCW 9.41.270(1) makes it "unlawful for any person to carry, exhibit, display or draw any firearm, . . . in a manner, . . . that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." Thus, to obtain an instruction on this offense, Mr. Rodriguez needed to show evidence in the record that he did not assault Deputy Rapp, but only either intended to intimidate him or acted in a manner that warranted alarm for the safety of others.

He did not make that showing. Mr. Rodriguez did not testify, so there was no evidence of his purpose in drawing the zip gun on Deputy Rapp.[2] Dr. Rubin testified that Mr. Rodriguez did have the ability to intend his actions, but simply had a distorted view of reality. Thus, there was no evidence to suggest that he did not intend to create fear and apprehension in Deputy Rapp (and thus not assault him), but did intend to intimidate him. Absent evidence that he was not intending to assault the deputy, there simply was no factual basis for concluding that only unlawful display of a weapon was committed.

The trial court correctly concluded that there was no factual basis on which to instruct the jury on the offense of unlawful display of a weapon.

---

[2] A homemade shotgun, consisting of a metal tube containing a shotgun shell and an improvised firing mechanism was found, disassembled, in the car.

*Jury Inquiry*

Mr. Rodriguez also contends that the court commented on the evidence by answering the juror inquiry. Our review of this claim is hampered by the lack of a record regarding the answer, but we conclude that if there was any error, it was harmless.

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. This provision "prohibits a judge from conveying to the jury his or her personal attitudes toward the merits of the case." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997). The purpose of this provision "is to prevent the jury from being unduly influenced by the court's opinion regarding the credibility, weight, or sufficiency of the evidence." *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007) (citing *State v. Eisner*, 95 Wn.2d 458, 462, 626 P.2d 10 (1981)). "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). Thus, a jury instruction which removes a factual matter from the jury constitutes a comment on the evidence in violation of this section. *Becker*, 132 Wn.2d at 64-65. In determining whether a statement by the court amounts to a comment on the evidence, a reviewing court looks to the facts and circumstances of the case. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970).

Mr. Rodriguez argues that the court's response did take a factual issue away from the jury in violation of the constitutional protection. He interprets the jury's inquiry as addressing the element of having "been adjudicated guilty as a juvenile of a felony"[3] and the court's answer "as indicating that the State had already proven that element." Br. of Appellant at 9. The prosecution, looking at the entirety of the inquiry, reads it as the jury asking if the proven malicious mischief adjudication constituted a felony, a legal question that the judge could properly answer.[4]

Both of these views are reasonable. This is an instance where knowledge of what took place in the trial court would have been useful in resolving this appeal. Typically, the court must consult with the parties before answering a jury question. CrR 6.15(f)(1); *State v. Jasper*, 174 Wn.2d 96, 121, 271 P.3d 876 (2012). If that consultation took place here, the defense and prosecution may well have agreed with the State's interpretation of the inquiry and/or the court's answer, leading to the invited error doctrine foreclosing this issue on appeal. *E.g., State v. Studd*, 137 Wn.2d 533, 546-51, 973 P.2d 1049 (1999). At a minimum, this court would have been informed of the view of the question held by the

---

[3] CP 46.

[4] A neutral response such as "Second degree malicious mischief is a felony" would have answered the inquiry without commenting on the evidence.

trial judge and parties. In the future, we urge trial courts to make a record at a convenient time concerning how a jury inquiry was handled.[5]

Because of the absence of a record of the proceedings below, we decline to address the substantive claim of error since there was no harm to the defense from the court's answer. An improper judicial comment is presumed to be prejudicial. *State v. Levy*, 156 Wn.2d 709, 723-25, 132 P.3d 1076 (2006); *State v. Bogner*, 62 Wn.2d 247, 382 P.2d 254 (1963). However, such an error is harmless where the record contains overwhelming untainted evidence to support the conviction. *Lane*, 125 Wn.2d at 839-40; *Sivins*, 138 Wn. App. at 60-61. Under this standard, the appellate court looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

Any error was harmless because the evidence supported the element and the defense did not contest it. Defense counsel told the jury there was "uncontrovertable evidence" that his client possessed a gun. Counsel did not address the prior conviction element or otherwise talk further about the unlawful possession count. In addition to putting the juvenile adjudication into the record as an exhibit, the State also presented

---

[5] If the defense was not consulted, then it had an incentive to make a record of that fact in order to preserve the issue for appeal. *E.g., Jasper*, 174 Wn.2d at 124. The court's handling of these issues might also implicate the public trial right found in our constitution, thus presenting an additional reason for creating a record. *State v. Koss*, 181 Wn.2d 493, 501 n.4, 334 P.3d 1042 (2014).

testimony from the defendant's juvenile probation officer that Mr. Rodriguez was the man who committed the malicious mischief and that it constituted a felony. The uncontested evidence established the element.

If the court erred in answering the jury inquiry as it did, the error was harmless beyond a reasonable doubt. The prior conviction element was not at issue in this case.

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

9