

2015 SEP 14 AM 9: 10

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                                   )       No. 71749-9-I
            Respondent, )
                                     )       DIVISION ONE
       v. )
                                       )
MITCHELL HENRY RAMM, )       UNPUBLISHED OPINION
                                       )
            Appellant. )       FILED: September 14, 2015
_____ )

BECKER, J. — A defendant is entitled to a jury instruction on a lesser included offense when the evidence supports an inference that only the lesser crime was committed. In this case, the trial court did not abuse its discretion when it ruled that a lesser included offense instruction was not warranted because no affirmative evidence raised an inference that Mitchell Ramm committed criminal trespass and not burglary. The use of written peremptory challenges during jury selection did not violate Ramm's right to a public trial. We affirm.

Around 10:00 p.m. on a Sunday night in January 2013, several police officers arrived to investigate a disturbance at a high-rise building that was under construction in the Belltown neighborhood in downtown Seattle. Approximately a dozen floors of the building were partially complete, and there were no exterior walls. At the edge of each floor, there was a safety railing consisting of two cables. A six-foot fence with a foot of barbed wire on top surrounded the

construction site on all sides. There were signs on the fence warning against entry approximately every 20 feet.

When the officers arrived, they heard a male voice yelling and crashing sounds from items being jettisoned from one of the upper floors. When police officers shone a spotlight into the construction area, they could see a man on the seventh or eighth floor. The officers could not find an entry point and used bolt cutters to cut a lock on a gate to enter the construction area. They then proceeded up makeshift stairs that were littered with debris and construction materials.

When the officers reached the eighth floor, Mitchell Ramm was standing on the landing holding a three-foot-long piece of rebar with a hook on the end over his head. Several officers drew their weapons and ordered Ramm to drop the rebar. Ramm did not. He told the officers to drop their guns. An officer attempted to use a stun gun against Ramm, but it could not penetrate his heavy winter coat. Ramm slammed the rebar on a drafting table, "screamed something," and ran "full tilt" towards the edge of the building. Officers feared Ramm would jump off the building. However, when he reached the edge, Ramm climbed over the cable safety railing and stood on a narrow ledge that was approximately four inches wide.

One of the officers approached Ramm and tried to encourage him to climb back over the railing. He refused. Soon after, officers specializing in hostage negotiation arrived and took over discussions with Ramm. Finally, at around

5:00 a.m. the following morning, Ramm climbed back over the cable fence and surrendered.

The building sustained a significant amount of property damage during the incident. On two floors, there was spray painted graffiti on exposed concrete areas. The graffiti included various numbers, symbols, and words, such as "Hiram Ulysses Simson Grant," "Jesus Christ," and "Infadel." Many items such as toolboxes, light fixtures, rebar, and fire extinguishers were damaged, having been thrown down the elevator shaft and stair shaft. The color of the graffiti matched a symbol that was spray painted on Ramm's coat.

The State charged Ramm with burglary in the second degree, a felony, and obstructing a law enforcement officer and malicious mischief in the third degree, both gross misdemeanors. After a period of competency restoration, the case proceeded to trial. Ramm was present during a portion of jury selection, but then refused to attend the trial.

Some witnesses described Ramm as speaking unintelligibly during the encounter. One officer said Ramm was "rambling" and not making sense and another witness said he engaged in "gibberish adult talk about the end of the world and conspiracies." One officer said that over the course of the night, Ramm appeared to "come down" from some type of "mental crisis." Nevertheless, Ramm did not assert a defense of insanity or diminished capacity and he presented no expert testimony about his mental health status.

After the State presented its evidence, the defense asked the court to instruct the jury on criminal trespass in addition to the charged offense of

3

burglary. The trial court determined that the evidence did not support an instruction on criminal trespass as a lesser included offense. The jury found Ramm guilty as charged.

LESSER INCLUDED INSTRUCTION

Ramm challenges the trial court's refusal to instruct the jury on the lesser included offense of criminal trespass.

Whether a defendant is entitled to a lesser included instruction is analyzed under the two-pronged test outlined in State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). First, each element of the lesser offense must be a necessary element of the charged offense (legal prong). State v. Berlin, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997). Second, the evidence must raise an inference that only the lesser offense was committed to the exclusion of the charged offense (factual prong). State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

A person commits second degree burglary if he or she enters or remains unlawfully in a building other than a vehicle or a dwelling with the intent to commit a crime against a person or property in the building. RCW 9A.52.030. A first degree criminal trespass conviction, on the other hand, requires proof that the defendant knowingly entered or remained unlawfully in a building and does not require additional intent to commit a crime. RCW 9A.52.070(1).

The parties agree that the legal prong of the Workman test is met because the elements of criminal trespass are necessary elements of the charged offense, burglary in the second degree. See State v. Soto, 45 Wn. App. 839,

4

841, 727 P.2d 999 (1986). The issue, then, is whether the evidence supports an inference that the defendant committed the lesser crime rather than the greater crime.

When analyzing the factual prong, we view the evidence in the light most favorable to the party who requested the instruction at trial. State v. Henderson, 182 Wn.2d 734, 742, 344 P.3d 1207 (2015); Fernandez-Medina, 141 Wn.2d at 455-56. The evidence "must affirmatively establish the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt." Fernandez-Medina, 141 Wn.2d at 456.

Ramm contends that our review of the trial court's decision is de novo because the court committed an error of law in refusing to provide the instruction. The trial court's ruling was based upon its determination that there was no evidentiary basis to give the lesser included instruction. Our case law is clear and well established that where, as here, the court denies a request for a lesser included instruction based upon a determination that the evidence does not support the inference the defendant committed only the lesser crime, this is a ruling under the factual prong. And we review such rulings for an abuse of discretion. See Henderson, 182 Wn.2d at 743; State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). A trial court abuses its discretion if its decision "is manifestly unreasonable or based upon untenable grounds or reasons." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Ramm's argument, here and below, hinges on the difference in the mens rea required for burglary (intent) and that required for trespass (knowledge).

Ramm contends that the prominent signs on the fence, locked gates, and barbed wire supplied evidence of his knowledge that he was entering the building site unlawfully. He argues that the evidence suggesting he had a mental health diagnosis tended to negate the higher mental state of intent to commit a crime that was required to find him guilty of burglary. Thus, Ramm contends that the jury could have found that he knowingly trespassed, but without intent to commit any crime. We disagree.

Whatever Ramm's intent when he entered the building site, he did not simply remain on the premises. He painted graffiti and destroyed property. There is no affirmative evidence in the record that his mental state was diminished to the point that he did not intend to commit these criminal acts. The trial court did not abuse its discretion in refusing to instruct the jury on criminal trespass in the first degree.

## PUBLIC TRIAL

Ramm contends that the exercise of peremptory challenges in writing violated his constitutional right to a public trial and the public's right to open proceedings.

This argument is foreclosed by our Supreme Court's recent decision in State v. Love, No. 89619-4, 2015 WL 4366419 (Wash. July 16, 2015).

Here, the record reflects that the parties exercised peremptory challenges in open court, and the court announced the stricken jurors in numerical order, without revealing which party struck particular jurors. The information about how the challenges were exercised is in the record because the prosecutor later read

6

on the record the numbers of the jurors who were stricken and identified which party struck each juror. Because the courtroom was not closed and the information about how the strikes were exercised was available for public scrutiny, the procedure did not violate Ramm's right to a public trial.

Finally, although Ramm has submitted additional grounds for review, the precise nature of the errors he alleges is unclear. See RAP 10.10(c) (appellate court will decline to consider issues in statement of additional grounds for review if they do not "inform the court of the nature and occurrence of alleged errors"). His allegations also appear to concern matters outside the record and cannot be considered on appeal.

Affirmed.

Becker, J.

WE CONCUR:

Spearman, C.J.