# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>DANIEL CASTANEDA-CRUZ,<br><br>                    Appellant. | DIVISION ONE<br><br>No. 78813-2-I<br><br>UNPUBLISHED OPINION<br><br>FILED:  December 30, 2019 |

DWYER, J. — Daniel Castaneda-Cruz was charged with child molestation in the third degree.  After a jury trial, he was convicted and sentenced to 10 months' confinement, to be followed by 12 months of community custody.  He appeals, averring that insufficient evidence supported his conviction, that the trial court erred in refusing to give a requested jury instruction, and that a community custody condition should be stricken for vagueness.  As none of his challenges have merit, we affirm.

I

Daniel Castaneda-Cruz lived with his niece, Sara Gregorio-Guzman, her husband, and their two children, son J.F. and daughter B.F.  Castaneda-Cruz was known to the family to have a drinking problem, and although he never drank in front of his niece's family, he often smelled of alcohol.  Castaneda-Cruz was 46 years old in April 2018.

Each child had a separate bedroom in the family's apartment, although B.F. sometimes slept in her parents' bedroom.  Castaneda-Cruz alternately slept

in the family living room or, if B.F. stayed with her parents, in B.F.'s room. Generally, 15-year-old J.F. avoided spending time with Castaneda-Cruz and tended to stay in his room when Castaneda-Cruz was home. In April 2018, Castaneda-Cruz obtained employment at a restaurant, working an evening shift that typically ended around 10:00 p.m.

On April 8, 2018, Gregorio-Guzman and her husband left the house around 6:00 p.m., while Castaneda-Cruz was at work, to attend a concert. While B.F. stayed with Gregorio-Guzman's sister, Marciela Gregorio,[1] J.F. was permitted to stay at home. J.F. spent the evening in his room playing video games and listening to music before preparing to go to bed between 10:00 and 11:00 p.m. He last left his room to brush his teeth, after which he closed the door and went to sleep, clothed in a t-shirt and shorts and covered by two blankets.

J.F. awoke around 11:30 p.m. when he felt his penis being touched. J.F. saw that Castaneda-Cruz was kneeling by J.F.'s bedside with his head, and part of his chest, underneath the two blankets. For between one and two minutes, Castaneda-Cruz rubbed J.F.'s penis in a circular motion, his hand under the covers but over J.F.'s shorts. When J.F.'s body twitched, Castaneda-Cruz turned and crawled out of the room without saying anything to J.F. J.F. testified that Castaneda-Cruz did not smell of alcohol when this incident occurred.

At about 11:45 p.m., a deeply upset J.F. called his mother to inform her of what had transpired. Gregorio-Guzman immediately called Marciela, asked her to pick up J.F., and then left the concert with her husband for Marciela's house.

---

[1] Because Marciela Gregorio and Sara Gregorio-Guzman have similar surnames, we refer to Marciela by her first name to avoid confusion.

2

When Marciela arrived at Gregorio-Guzman's apartment, J.F. was standing outside, visibly distraught. Upon returning to her house with J.F., Marciela telephoned the police.

Gregorio-Guzman arrived with her husband at Marciela's house around 1:30 a.m. Also at this time, Deputy William Ter-Veen of the Snohomish County Sheriff's Office arrived at Marciela's house. Thirty minutes later, Deputy Ter-Veen followed Gregorio-Guzman and her husband back to their apartment to take photographs. Castaneda-Cruz was not present in the apartment at this time but, as the three were leaving to return to Marciela's, Gregorio-Guzman saw Castaneda-Cruz on a sidewalk near the apartment. She informed Deputy Ter-Veen of Castaneda-Cruz's location and his relationship to them. Deputy Ter-Veen contacted Castaneda-Cruz, who identified himself. Castaneda-Cruz appeared intoxicated at this time, with a strong odor of alcohol about him and his speech slurred.

Castaneda-Cruz was charged with child molestation in the third degree. The trial court refused Castaneda-Cruz's request to instruct the jury regarding the lesser included offense of assault in the fourth degree. The jury found Castaneda-Cruz guilty. At sentencing, the trial court imposed a term of 10 months' confinement, to be followed by 12 months of community custody. Castaneda-Cruz appeals.

II

Castaneda-Cruz first argues for reversal on the basis that insufficient evidence supports his conviction. This is so, he avers, because the State failed

3

to prove that he made sexual contact with J.F., a necessary element of child molestation in the third degree. Specifically, he claims that there was no evidence that he touched J.F. for the purpose of sexual gratification. Because there is ample evidence that Castaneda-Cruz fondled his grandnephew's penis for this exact purpose, we affirm.

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Deference must be given to the trier of fact who resolves conflicting testimony and evaluates the credibility of witnesses and persuasiveness of material

evidence." State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

To prove Castaneda-Cruz guilty, the State had to show that he had "sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.089(1). The only element at issue here is whether the State proved "sexual contact." Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

Castaneda-Cruz argues that no reasonable juror could have found a sexual contact occurred based on J.F.'s testimony of how quickly the contact began and ended. To this end, he relies on State v. Powell, 62 Wn. App. 914, 816 P.2d 86 (1991). In Powell, the defendant hugged a child around the chest, touched her groin through her underwear when helping her off his lap, and touched her thighs. 62 Wn. App. at 916. The court noted that each touch was outside the child's clothes and was susceptible to an innocent explanation. Powell, 62 Wn. App. at 916. The touching was described as "fleeting" and the evidence of the defendant's purpose was "equivocal." Powell, 62 Wn. App. at 917-18. The court determined that the evidence was insufficient to support the inference that the defendant touched the child for the purpose of sexual gratification. Powell, 62 Wn. App. at 918.

5

Here, in contrast with Powell, there was sufficient evidence for the jury to find "sexual contact" within the meaning of the statute as well as "sexual gratification." Plainly, Castaneda-Cruz's action involved more than a "fleeting touch" over J.F.'s clothes. The State presented evidence that Castaneda-Cruz not only touched J.F.'s penis over his clothing but persisted in rubbing J.F.'s penis for a period of time between one and two minutes. His conduct of approaching J.F. while J.F. was asleep and his parents absent, then silently crawling out of the room when it appeared J.F. might be awake, suggested that he was attempting to hide his actions. Castaneda-Cruz had no caretaking function over J.F. All of these facts support the inference that Castaneda-Cruz touched J.F. for the purposes of gratifying his own sexual desire.[2] The trial court had before it sufficient evidence to convict Castaneda-Cruz of child molestation in the third degree.

III

Castaneda-Cruz next faults the trial court's refusal to give his requested jury instruction on the lesser included offense of assault in the fourth degree. This refusal was made in error, he avers, because the evidence presented did not support that he made sexual contact with J.F., raising an inference that assault was committed to the exclusion of child molestation. His argument is, again, belied by the ample evidence of his sexual motivation in touching J.F.

---

[2] Castaneda-Cruz avers that he was intoxicated at the time he was in J.F.'s room, and that his intoxication would necessarily prevent him from initiating sexual contact. However, there is no evidence that Castaneda-Cruz was in fact intoxicated when the incident took place.

When the evidence supports it, both the State and the defendant have a statutory right to present an instruction to the jury on lesser included offenses. State v. Gamble, 154 Wn.2d 457, 462, 114 P.3d 646 (2005). The failure of a trial court to give a lesser included instruction when the defendant is entitled to one is reversible error. State v. Ginn, 128 Wn. App. 872, 878, 117 P.3d 1155 (2005). We apply the test set forth in State v. Workman, 90 Wn.2d 443, 584 P.2d 382 (1978) to determine whether a defendant is entitled to a lesser included offense instruction. State v. Porter, 150 Wn.2d 732, 736, 82 P.3d 234 (2004).

A defendant is entitled to a lesser included offense instruction if the two conditions of the Workman test are met. 90 Wn.2d at 447-48. First, to satisfy the test's legal component, each element of the lesser included offense must be a necessary element of the charged offense. Workman, 90 Wn.2d at 447-48. Second, to fulfill the test's factual component, evidence presented in a case "must raise an inference that *only* the lesser included[] . . . offense was committed to the exclusion of the charged offense." State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

When analyzing the factual component, the trial court must view the evidence that purports to support a requested instruction in the light most favorable to the party requesting the instruction. Fernandez-Medina, 141 Wn.2d at 455-56. "[T]he court must consider all of the presented evidence when deciding whether or not to give a lesser included instruction," and may be required to give the lesser included instruction even when the defendant's own

7

testimony contradicts the evidence supporting the instruction. State v. Stevens, 158 Wn.2d 304, 311, 143 P.3d 817 (2006).

The State concedes that the Workman test's legal component is met here. We accept the State's concession. See Stevens, 158 Wn.2d at 311. When only the factual component of the test is in dispute, we review the trial court's determination for an abuse of discretion. State v. LaPlant, 157 Wn. App. 685, 687, 239 P.3d 366 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

To determine whether the factual component of the Workman test is satisfied, we analyze whether the evidence "'affirmatively establish[es] the defendant's theory of the case—it is not enough that the jury might disbelieve the evidence pointing to guilt.'" Porter, 150 Wn.2d at 737 (quoting Fernandez-Medina, 141 Wn.2d at 456). If the evidence would permit a jury to rationally find the defendant guilty of the lesser offense and acquit him of the greater offense, a lesser included instruction should be given. State v. Berlin, 133 Wn.2d 541, 551, 947 P.2d 700 (1997).

Assault in the fourth degree is defined as an assault neither amounting to assault in the first, second, or third degree, nor custodial assault. RCW 9A.36.041(1); Stevens, 158 Wn.2d at 310. Because the statute does not define "assault," we look to the following common law definitions: (1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not

the actor intends to inflict or is capable of inflicting that harm. Stevens, 158 Wn.2d at 310-11. Pertinent herein is the second definition of assault, an unlawful touching with criminal intent, which "'[u]nlike other forms of assault, . . . does not require proof of specific intent to cause apprehension or inflict substantial bodily harm.'" State v. Cardenas-Flores, 189 Wn.2d 243, 266, 401 P.3d 19 (2017) (quoting Stevens, 158 Wn.2d at 314 (Madsen, J., dissenting)). "'Instead, assault by actual battery is an intentional touching or striking of another person that is harmful or offensive, regardless whether it results in any physical injury.'" Cardenas-Flores, 189 Wn.2d at 266 (quoting Stevens, 158 Wn.2d at 314 (Madsen, J., dissenting)). The intent required to prove an assault by unlawful touching is the "intent to do the physical act constituting assault." State v. Hall, 104 Wn. App. 56, 62, 14 P.3d 884 (2000). Thus, to satisfy the factual component of the Workman test, Castaneda-Cruz needs to demonstrate that the evidence at trial, viewed in his favor, shows that (1) he intentionally touched J.F., (2) the touch was offensive, but (3) the touch did not constitute sexual contact.

The evidence does not support this proposition. The circumstances indicated that Castaneda-Cruz intended to conceal his conduct and avoid culpability for touching J.F. Castaneda-Cruz entered J.F.'s room when J.F.'s parents were not home and J.F. was sleeping and concealed himself under J.F.'s blankets. He persisted in fondling J.F.'s genitals for between one and two minutes—hardly a fleeting period of time—and, upon J.F.'s bodily movement, immediately crawled out of the room without saying anything. Castaneda-Cruz was still in the apartment when J.F. departed, but then fled the scene.

Castaneda-Cruz's attempts to conceal his action raises the inference that he touched J.F. for the purpose of sexual gratification. There was no affirmative evidence that the touching was made for any other nonsexual reason. Instead, Castaneda-Cruz argues that the evidence showed he was intoxicated to the extent that a juror could conclude he did not touch J.F. for sexual purposes. There is no evidence that Castaneda-Cruz was intoxicated at the time he touched J.F., as opposed to later in the evening. Thus, there remained no evidence that he committed assault in the fourth degree to the exclusion of child molestation in the third degree. The trial court did not err in declining to instruct the jury on this lesser included offense, and Castaneda-Cruz's argument to the contrary fails.

IV

Finally, Castaneda-Cruz argues that the community custody condition imposed at sentencing, requiring that he stay out of listed areas "where children's activities regularly occur or are occurring," is unconstitutionally void for vagueness. We disagree and affirm the trial court's imposition of this condition.

The guaranty of due process, contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, precludes vague laws. State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). Due process requires that citizens have fair warning of conduct that is proscribed. City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). A statute is unconstitutionally vague if (1) it does not define the criminal offense with sufficient definiteness that an ordinary person can

understand what conduct is proscribed, or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement. Kolender v. Lawson, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008).

If persons of ordinary intelligence are able to understand what the law proscribes, notwithstanding some possible areas of disagreement, the law is sufficiently definite. Bahl, 164 Wn.2d at 754. A community custody condition is not unconstitutionally vague simply because a person cannot predict with complete certainty the exact point at which his or her actions would be classified as prohibited conduct. State v. Sanchez Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010).

Castaneda-Cruz relies primarily on our holding in Irwin. Therein, we held that a condition prohibiting the defendant from "frequent[ing] areas where minor children are known to congregate, as defined by the supervising CCO" was unconstitutionally vague. Irwin, 191 Wn. App. at 652. However, we reached this conclusion noting that "[w]ithout some clarifying language or an illustrative list of prohibited locations . . . the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'" Irwin, 191 Wn. App. at 655 (internal quotation marks omitted) (quoting Bahl, 164 Wn.2d at 753). In contrast, Castaneda-Cruz challenges a condition that states:

> Stay out of areas where children's activities regularly occur or are occurring. This includes, parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, restaurants, and

11

any specific location identified in advance by [Department of Corrections] or [Community Custody Officer].

The condition imposed here cures the defect in the condition challenged in Irwin because it contains the "illustrative list of prohibited locations" that we held would provide sufficient notice. Irwin, 191 Wn. App. at 655. The condition here further alleviates the arbitrary enforcement concerns raised in Irwin because the list does not vest a correctional officer with the sole authority to define places where children congregate. Given that the condition clearly cures the vagueness defects identified in Irwin, Castaneda-Cruz's vagueness challenge fails.

Affirmed.

WE CONCUR: