IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32560-1-III |
| Respondent, | ) | Consolidated with 32456-7-III |
| v. | ) | |
| NICHOLAS GLENN ALLEMAND, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | |
| v. | ) | |
| SERENA FORD, | ) | |
| Appellant. | ) | |

FEARING, C.J. — Nicholas Allemand and Serena Ford appeal their convictions and

sentences for second degree theft and first degree trafficking in stolen property. They

claim the trial court committed error in failing to instruct the jury on lesser included offenses. We disagree and affirm all convictions. We remand, however, to correct errors in sentencing.

## FACTS

This appeal arises out of an August 2011 burglary and theft at Ann Black's Ellensburg home. During the summer of 2008, Ann Black's son, Chris Black, and Paul Parks occupied a camper trailer on Ann Black's property, and the two men enjoyed full access to her house. In 2009, Chris Black moved to Spokane to recover from a drug addiction.

Appellants Serena Ford and Nicholas Allemand are now married, but were boyfriend and girlfriend in August 2011. In August, Ford resided in Cle Elum with her former boyfriend, Paul Parks, who was also a friend of Allemand. Each man possesses a tattoo of Ford's name on his respective flesh. Paul Parks occupied a prison in early August.

On August 15, 2011, Serena Ford and Nicholas Allemand traveled from Ford's home in Cle Elum to Spokane to celebrate Ford's birthday. The couple visited friend Chris Black and his girlfriend and spent the night at a casino. While Allemand and Ford visited Spokane, Chris informed his girlfriend that his mother, Ann Black, would shortly visit him in Spokane.

On August 16, 2011, Serena Ford and Nicholas Allemand returned to Cle Elum.

2

Authorities released Paul Parks from jail on August 16, and Parks spent time with Ford and Allemand during the ensuing days. On August 18, 2011, Ann Black left Ellensburg to visit her son in Spokane.

On August 19, 2011, Serena Ford and Nicholas Allemand, while in Yakima, received a telephone call from Paul Parks. Ford and Allemand left Yakima around noon to retrieve Parks in Ellensburg. According to Ford, the two met Parks at an Ellensburg park and then proceeded to return to Yakima with Parks. Parks carried a large backpack. Ford drove the car because she was the only one of the three with a driver's license.

During the trio's departure from Ellensburg around 1:20 p.m., on August 19, Ellensburg Police Sergeant Rob Hoctor stopped Serena Ford for driving with a cracked windshield. At the time of the traffic stop, Ford, with passengers Parks and Allemand, traveled in the direction of Ann Black's home and was within one mile of the residence. When Sergeant Hoctor approached the car, Allemand hid his face.

At 5:00 p.m. on August 19, 2011, Ann Black returned home and discovered her back door broken, closet safe open, and personal property missing. Thieves stole jewelry, including Black's grandfather's pocket watch, from Black's closet safe, but did not heist other commonly stolen goods such as electronics. Black reported the burglary. On August 22, Paul Parks sold the grandfather's pocket watch at a Yakima pawn shop and signed the pawn slip.

3

PROCEDURE

The State of Washington charged Paul Parks, Nicholas Allemand, and Serena Ford with residential burglary, second degree theft, and first degree trafficking in stolen property. Paul Parks pled guilty. The State tried Ford and Allemand together.

During trial, the State entered as an exhibit and Ann Black testified to a property loss insurance claim that she submitted to her insurer as a result of the home theft. Black reviewed the entries on the claim for the jury. Black declared that the claim included five cabbed Ellensburg Blues valued at $625, a tie tack worth $80, a stick pin worth $80, four wedding rings worth $400, three fire opals worth $900, a diamond broach worth $500, a jewelry chest worth $85, a cameo pin worth $150, a computer worth $1,200, and an unspecified amount for the door replacement. An Ellensburg Blue is an agate stone. "Cabbed" means the stone is shaped. Ann Black also identified the unique, antique pocket watch that belonged to her grandfather. Black admitted she knew not the market value of the watch.

During trial, Ellensburg Police Officer Clifford Caillier testified that, in his experience, a burglary where jewels, but not electronics, are taken indicates that the intruder likely knew the victim or the contents of the home. Pawn shop owner Duarte Fernandes testified that he bought the gold filled watch from Paul Parks for $40. He purchased the nonfunctioning watch only for parts.

4

Nicholas Allemand did not testify at trial. Serena Ford testified she never requested Paul Parks to pawn any property on her behalf. She did not notice Paul Parks with any jewelry with him on August 19, 2011. Ford insisted that she had never been to Ann Black's home, that she stole nothing from Black's house, and lacked any knowledge of Nicholas Allemand journeying to Ann Black's home.

During her trial testimony, Serena Ford declared that she used methamphetamine in August 2011. Ford averred that methamphetamine caused her memory loss and her memory of August 2011 was fuzzy. She never suffered a blackout due to methamphetamine. The State questioned her about the sale or trade of goods for drugs or money. Ford admitted selling goods but insisted that, if someone gave her goods to sell, she would inquire about the goods being stolen. She acknowledged the possibility that the person handing her the goods might lie about whether the property was stolen.

Nicholas Allemand and Serena Ford requested instructions for the lesser offenses of third degree theft and second degree trafficking in stolen property. Allemand and Ford argued that the jury could find that the two burgled Ann Black, but stole goods worth less than $750. The trial court declined to give any of the lesser included offense instructions. The court concluded that the evidence did not support a verdict for third degree theft. Also, the evidence did not support a conviction for second degree trafficking because no evidence showed reckless involvement in the sale of stolen goods.

The trial court instructed the jury on the crime of trafficking in stolen property in

5

the first degree as follows:

> To convict the defendant of the crime of trafficking in stolen
> property in the first degree, each of the following elements of the crime
> must be proved beyond a reasonable doubt:
> (1) That on or about August 22, 2011
> (2) The defendant
>   a. knowingly initiated, organized, planned, financed, directed,
> managed, or supervised the theft of property for sale to others; OR
>   b. knowingly trafficked in stolen property.
> (3) That this act occurred in the State of Washington

Clerk's Papers (Serena Ford) (CP1) at 73. The trial court also instructed the jury

on accomplice liability.

A jury found Nicholas Allemand and Serena Ford guilty of second degree theft

and first degree trafficking in stolen property. The jury acquitted the two of residential

burglary.

The trial court ordered Nicholas Allemand, Serena Ford, and Paul Parks to jointly

and severally pay restitution of $6,635.77 to Ann Black's insurer. The court based the

restitution amount on a victim's restitution report that lacked any itemization. Although

the report read "See attached supporting documents," no documentation appears in our

record. CP1 at 119.

The trial court sentenced Nicholas Allemand to thirty-eight months of

confinement, with no community custody. The trial court imposed on Allemand a $500

victim assessment fee, $200 in court costs, $800 for a court appointed attorney, $100

deoxyribonucleic acid (DNA) collection fee, and $50 booking fee. The court ordered that

6

Allemand pay the financial obligations at $100 per month beginning with his release.

Despite the trial court ordering no community custody for Nicholas Allemand, appendix 4.6 to Allemand's judgment and sentence directs him to report to the Department of Corrections within three days of the commencement of community supervision. Another appendix to the judgment and sentence, titled Payment of Legal Financial Obligations, orders Allemand to tender his first payment thirty days after the signing of the judgment and sentence.

Paragraph 4.4 of Nicholas Allemand's judgment and sentence reads:

> **4.4 DNA Testing.** The defendant shall have a biological sample collected for purposes of DNA identification analysis and the defendant shall fully cooperate in the testing. The appropriate agency shall be responsible for obtaining the sample prior to the defendant's release from confinement. This paragraph does not apply if it is established that the Washington State Patrol crime laboratory already has a sample from the defendant for a qualifying offense. RCW 43.43.754.

Clerk's Papers (Nicholas Allemand) (CP2) at 67.

## LAW AND ANALYSIS

### Lesser Included Offenses

Nicholas Allemand and Serena Ford contend that the trial court errantly denied their request to instruct the jury on lesser included offenses. The desired lesser included offense for second degree theft was third degree theft. The requested lesser included offense for first degree trafficking in stolen property was second degree trafficking. Allemand and Ford maintain that facts presented during trial supported the lesser charges.

7

The State responds that substantial evidence did not support the lesser offenses. We hold

that the trial court committed no error in refusing instructions for the lesser included

offenses of third degree theft and second degree trafficking

We review principles of law before analyzing separately the two charges against

each defendant. The right to a lesser included offense instruction is statutory. *State v.*

*Davis*, 121 Wn.2d 1, 4, 846 P.2d 527 (1993), *abrogated on other grounds by State v.*

*Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997). RCW 10.61.006 reads:

> In all other cases the defendant may be found guilty of an offense the
> commission of which is necessarily included within that with which he or
> she is charged in the indictment or information.

A lesser included offense differs from its first cousin: inferior degree offense. *State v.*

*Fernandez-Medina*, 141 Wn.2d 448, 454-55, 6 P.3d 1150 (2000).

A jury may find a defendant guilty of a lesser offense necessarily included in the

offense charged. *State v. Berlin*, 133 Wn.2d at 544. A lesser included offense jury

instruction is available to both the prosecution and the defense. *State v. Berlin*, 133

Wn.2d at 548. To establish that an offense is a lesser included offense: (1) each of the

elements of the lesser offense must be a necessary element of the offense charged, and (2)

the evidence in the case must support an inference that only the lesser offense was

committed to the exclusion of the greater offense. *State v. Condon*, 182 Wn.2d 307, 316,

343 P.3d 357 (2015); *State v. Berlin*, 133 Wn.2d at 548; *State v. Workman*, 90 Wn.2d

8

443, 447-48, 584 P.2d 382 (1978). The first prong is the legal prong, and the second prong is the factual prong. *State v. Berlin*, 133 Wn.2d at 546.

This rule of a lesser included offense benefits the defendant by providing a third alternative to either conviction of the offense charged or acquittal. *State v. Berlin*, 133 Wn.2d at 544-45. The rule seeks to ensure that juries considering the case of a defendant plainly guilty of some offense do not set aside reasonable doubt in order to convict her and avoid letting her go free. *Keeble v. United States*, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973).

The standard for appellate review depends on whether the trial court's refusal to give a lesser included offense instruction is based on legal or factual grounds. *State v. Walker*, 136 Wn.2d 767, 771, 966 P.2d 883 (1998). If based on a ruling of law, we review the trial court's refusal de novo. *State v. Walker*, 136 Wn.2d at 772. If based on a factual dispute, we review for abuse of discretion. *State v. Walker*, 136 Wn.2d at 771-72. Still, the defendant is entitled to have the evidence taken in the light most favorable to him. *State v. Bergeson*, 64 Wn. App. 366, 367, 824 P.2d 515 (1992). Since this test is similar to the standard for the denial of a summary judgment motion in a civil case, one might conclude that this court should review the denial of a lesser included instruction for lack of evidence on a de novo basis.

Additional rules govern the factual prong to a lesser included offense. The jury's prerogative to disbelieve the State's evidence does not alone support the presentation of a

9

jury instruction on the lesser included offense. *State v. Speece*, 115 Wn.2d 360, 362-63,

798 P.2d 294 (1990); *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *overruled*

*on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991). Instead, in a

rule that controls our decision, some evidence must be presented which affirmatively

establishes the defendant's theory on the lesser included offense. *State v. Speece*, 115

Wn.2d at 362-63; *State v. Fowler*, 114 Wn.2d at 67. The trial court must consider all

evidence presented at trial, including the State's evidence. *State v. Fernandez-Medina*,

141 Wn.2d at 456 (2000).

## *Theft*

The State charged Nicholas Allemand and Serena Ford with second degree theft,

which requires proof that he or she committed theft of property or services which exceed

seven hundred fifty dollars in value but does not exceed five thousand dollars in value.

RCW 9A.56.040. A person is guilty of theft in the third degree if he or she commits theft

of property or services which does not exceed seven hundred fifty dollars in value. RCW

9A.56.050. The value of the goods stolen determines the degree of theft.

We agree that theft in the third degree is a lesser included offense of second

degree theft. All the elements of third degree theft must be proved to support a

conviction for second degree theft. Therefore, Serena Ford and Nicholas Allemand

established the legal prong of the test. We must determine if Ford and Allemand satisfy

the factual prong. In other words, we must consider whether the trial court abused its

10

discretion in determining that, if Allemand and Ford committed theft, the value of the stolen property necessarily exceeded $750.

The State presented evidence that implicated Nicholas Allemand and Serena Ford in the theft of all of the goods stolen from Ann Black's home. None of the State's evidence limited either Allemand's or Ford's culpability to some, but not all, of the property heisted. Allemand presented no testimony that he stole some, but not all, of Black's jewelry and other personal property. He did not testify. Serena Ford denied stealing or possessing any goods from Black's home and repudiated any participation in handling the jewelry.

The State presented evidence that the goods purloined from Ann Black's residence well exceeded the sum of $750. Neither Nicholas Allemand nor Serena Ford presented evidence contradicting the value of the goods to which Black testified. In short, neither the State nor the defense presented any affirmative evidence that either Allemand or Ford stole only a fraction of the misappropriated property or that the value of the stolen goods deceeded $750. Therefore, the trial court correctly denied Nicholas Allemand and Serena Ford a jury instruction on the theft of property below $750.

## Trafficking in Stolen Property

The State charged Nicholas Allemand and Serena Ford with first degree trafficking in stolen property, which requires proof that he or she "*knowingly* initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to

11

others, or who knowingly traffics in stolen property." RCW 9A.82.050 (emphasis added). However, "[a] person who *recklessly* traffics in stolen property is guilty of trafficking in stolen property in the second degree." RCW 9A.82.055 (emphasis added). ". . . A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). When the same criminal conduct may be committed knowingly or recklessly, the offense committed recklessly is a lesser included offense of the crime perpetrated knowingly. *State v. Berlin*, 133 Wn.2d at 550-51.

Serena Ford denied any involvement in the handling of the goods removed from Ann Black's residence. Nevertheless, during questioning by the State, Ford testified that she used methamphetamine in August 2011. She also averred that her memory for this month is fuzzy. She, nonetheless, presented no testimony that her memory impaired her to the extent that she could not remember possessing or assisting in the handling of the stolen goods. Thus, she failed to supply affirmative evidence needed to support the giving of an instruction for second degree trafficking.

A case of some import is *State v. Berlin*, 133 Wn.2d 541 (1997). The Supreme Court held that the trial court did not err in giving a manslaughter instruction in a murder case, since evidence showed that the defendant drank alcohol to the extent potentially impairing his ability to form an intent to kill. In our appeal, no affirmative evidence

12

supports a finding that methamphetamine impaired Serena Ford's ability to knowingly traffic stolen goods.

The trial court also did not err by refusing to instruct the jury on second degree trafficking for Nicholas Allemand. Allemand did not testify at trial. No affirmative evidence supported a theory that Allemand recklessly trafficked stolen property.

### Accomplice Liability

Nicholas Allemand and Serena Ford contend that the trial court erred by giving an accomplice instruction. Although they did not object to the instruction below, they now argue that the instruction relieved the State of proving every element of first degree trafficking in stolen property. The State maintains that Allemand and Ford waived under RAP 2.5 because they failed to object below. The State further argues that the accomplice instruction did not relieve the State of its burden to prove every element of the crime. We agree with the State's first argument and do not address the second contention.

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the trial court of the rules of law it wishes the court to apply and afford the court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

13

No. 32560-1-III; 32456-7-III
*State v. Allemand; State v. Ford*

RAP 2.5(a) formalizes a fundamental principle of appellate review. The first

sentence of the rule reads:

**Errors Raised for First Time on Review.** The appellate court may
refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than that a constitutional right, or a right of any

other sort, may be forfeited in criminal cases by the failure to make timely assertion of

the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507

U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321

U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Good sense lies behind the requirement that arguments be first asserted at trial.

The prerequisite affords the trial court an opportunity to rule correctly on a matter before

it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177

(2013). There is great potential for abuse when a party does not raise an issue below

because a party so situated could simply lie back, not allowing the trial court to avoid the

potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v.*

*Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741,

762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses

several other concerns. The rule serves the goal of judicial economy by enabling trial

courts to correct mistakes and thereby obviate the needless expense of appellate review

and further trials, facilitates appellate review by ensuring that a complete record of the

14

issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Nicholas Allemand and Serena Ford argue the accomplice instruction implicates the Fourteenth Amendment right to due process because it relieves the State from proving

15

every element of the crime. Although they identify a constitutional right, they do not argue that any violation of the right is manifest. The failure to object below threatens proper review here because the trial court did not have the opportunity to explain the decision to include the accomplice instruction, and the State did not develop the record to justify the instruction. We decline to address this assignment of error.

## Restitution

Each defendant assigns errors to portions of his or her respective sentence. Both contend that the trial court erroneously imposed restitution for damages not caused by the convicted crimes. They argue that the $6,635.77 restitution award includes damages to Ann Black's property caused by the burglary but not the theft or trafficking of the stolen property. The jury acquitted Nicholas Allemand and Serena Ford on the burglary charge. The State responds that substantial evidence supports the restitution award. We agree with Allemand and Ford. We remand to the trial court to correct the restitution sum.

The authority to impose restitution is not an inherent power of the court, but is derived from statutes. *State v. Gray*, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012); *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). A number of statutes address restitution under varying circumstances. The controlling statute here is RCW 9.94A.753. The statute reads, in relevant part:

> (3) Except as provided in subsection (6) of this section, restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual

16

expenses incurred for treatment for injury to persons, and lost wages resulting from injury.

. . . .

(5) Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property or as provided in subsection (6) of this section unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. In addition, restitution shall be ordered to pay for an injury, loss, or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement.

RCW 9.94A.753.

When ordering restitution, the sentencing court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. *State v. Dedonado*, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000). When a material fact is disputed, the State must prove the damages at an evidentiary hearing by a preponderance of the evidence. *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). The amount of restitution must be established with substantial credible evidence which does not subject the trier of fact to mere speculation or conjecture. *State v. Kisor*, 68 Wn. App. 610, 620, 844 P.2d 1038 (1993).

Case law expands on the language of RCW 9.94A.753(5). A trial court exceeds its statutory authority in ordering restitution when the loss suffered is not causally related to the offense committed by the defendant. *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834 (1998); *State v. Vinyard*, 50 Wn. App. 888, 891, 751 P.2d 339 (1988).

17

Restitution for loss beyond the scope of the crime charged is properly awardable only when the defendant enters into an express agreement, as part of the plea bargain process, to make such restitution. *State v. Woods*, 90 Wn. App. at 909. Otherwise, a trial court's discretion in awarding restitution is limited to the "precise offense" charged. *State v. Woods*, 90 Wn. App. at 907; *State v. Harrington*, 56 Wn. App. 176, 179, 782 P.2d 1101 (1989); *State v. Ashley*, 40 Wn. App. 877, 878-79, 700 P.2d 1207 (1985). Although these rules speak in terms of the crime charged, the cases limit restitution to damages resulting from the crime of conviction. *State v. Mead*, 67 Wn. App. 486, 490, 836 P.2d 257 (1992).

The trial court ordered restitution to match Ann Black's insurance claim, which included damages to her door caused by the burglary. She testified that her insurance claim included costs to replace her door. The burglary, not the theft or trafficking, caused the door damage. One might argue that the burglars would not have committed their crime without Nicholas Allemand's or Serena Ford's desire to steal the goods. Nevertheless, the State presented no direct evidence that Allemand or Ford participated in the theft until after the entry of the home. We remand for the trial court to exclude the cost to repair the door from the restitution award.

## Legal Financial Obligations

Nicholas Allemand contends that the trial court erred in imposing discretionary legal financial obligations without inquiring into his ability to pay. He challenges a $800

18

fee for a court appointed attorney, $200 in court costs, and a $50 booking fee. The State

argues that Allemand waived any error by failing to challenge the imposition of the costs

before the trial court. We accept discretionary review of this assignment of error and

remand also for resentencing on the financial obligations.

Upon a conviction in superior court, the court may order the defendant to pay

restitution, costs, fines, and other assessments labeled as legal financial obligations.

RCW 9.94A.760(1). The law distinguishes between discretionary and mandatory legal

financial obligations. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541

respectively mandate that the court impose a victim assessment fee, a criminal case filing

fee, and the DNA collection fee regardless of the defendant's ability to pay. Trial courts

must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn.

App. 96, 102, 308 P.3d 755 (2013). Other legal financial obligations imposed by the trial

court, besides restitution, are discretionary. By statute, the court is not authorized to

order a defendant to pay discretionary fees unless the defendant possesses or will possess

the financial ability to pay. RCW 10.01.160(3) reads:

> The court shall not order a defendant to pay costs unless the
> defendant is or will be able to pay them. In determining the amount and
> method of payment of costs, the court shall take account of the financial
> resources of the defendant and the nature of the burden that payment of
> costs will impose.

In *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), the Evergreen State

Supreme Court clarified that a defendant, who makes no objection to the imposition of

19

discretionary legal financial obligations at sentencing, is not automatically entitled to

review. The court then summarily declared:

> RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right. Each appellate court must make its own decision to accept discretionary review.

*State v. Blazina*, 182 Wn.2d at 834-35 (footnote omitted) (internal citation

omitted). We exercise our discretion to grant review in this appeal because of the

high amount of legal financial obligations and also because we remand the case on

other grounds.

The trial court imposed on Nicholas Allemand a $500 victim assessment fee, $200

in court costs, $800 for a court appointed attorney, $100 DNA collection fee, and $50

booking fee. The victim assessment fee and DNA collection fee were mandatory and

thus we uphold their imposition. The trial court did not label the $200 in court costs as

the criminal filing fee, and therefore, we do not now consider the assessment as

mandatory. We wrote in *State v. Kuster*, 175 Wn. App. 420, 425, 306 P.3d 1022 (2013):

> The remaining $200 imposed was labeled "court costs," and the specific cost the court had in mind is not known. It may well be the $200 criminal filing fee—another mandatory fee provided by RCW 36.18.020(2)(h)—but for purposes of appeal we may not rely on that assumption.

We remand to the trial court to conduct a hearing to inquire as to Nicholas

Allemand's present or future ability to pay the $800 fee for a court appointed attorney

and the $50 booking fee. We also direct the court to identify the basis for the imposition

20

of the $200 court costs. If the basis is not the court filing fee, the trial court should include the $200 amount in its inquiry as to Allemand's ability to pay.

## DNA Collection Fee

Nicholas Allemand contends that the mandatory $100 DNA collection fee imposed under RCW 43.43.7541 violates both substantive due process and equal protection rights as applied to him and other similarly situated indigent defendants. Although Allemand recognizes that the fee implicates neither a fundamental right nor discriminates against a protected class of individuals, he nonetheless argues that the fee is not rationally related to the State's interest in funding the collection, testing, and retention of the offender's DNA. The State responds that the statute does not violate substantive due process because the fees are statutorily mandated and does not violate equal protection because Allemand is treated the same as other similarly situated defendants.

We decline to address this assignment of error because Nicholas Allemand did not disclose his financial condition to the trial court or support an inability to pay $100. Therefore, in accordance with *State v. Stoddard*, 192 Wn. App. 222, 228, 366 P.3d 474 (2016), Allemand does not show manifest constitutional error. He waived his constitutional challenge by failing to raise the argument before the trial court. We also note that this court does not address the constitutionality of a recoupment order before collection action or imposition of a penalty before nonpayment. *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997).

21

Second DNA Collection

Nicholas Allemand next contends that the trial court abused its discretion by ordering him to submit to a DNA collection fee under RCW 43.43.754, when he suffered other earlier convictions. At trial, Allemand neither objected to the fee, nor suggested that the State already collected his DNA for one of his earlier felony convictions. On appeal, he argues he prevails because of a lack of evidence in the record indicating that his DNA was *not* collected. We disagree.

RCW 43.43.754(2) provides: "If the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted." Thus, in order for this court to review Nicholas Allemand's contention, the record must contain information indicating whether the state patrol crime lab already has his DNA on file. *See State v. Thornton*, 188 Wn. App. 371, 374, 353 P.3d 642 (2015); *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

More importantly, Nicholas Allemand's judgment and sentence expressly relieves him of the responsibility of undergoing another DNA collection, if the state patrol has a DNA sample on file. Therefore, the trial court committed no error with regard to the DNA order.

22

Scrivener Errors

Appendix 4.6 to Nicholas Allemand's judgment and sentence requires him to report to the Department of Corrections within three days of the commencement of community supervision. Nevertheless, the trial court did not impose any community custody. Also, an appendix to the judgment and sentence, titled Payment of Legal Financial Obligations, orders Allemand to tender his first payment of legal financial obligations within thirty days of the signing of the judgment. Nevertheless, the judgment and sentence requires Allemand to begin payment of legal financial obligations upon release from incarceration. The State agrees that both errors must be remedied. We accept the State's acquiescence and remand for correction of the judgment and sentence. Appellate courts have remanded solely for correction of a scrivener's error in a judgment and sentence, in order to ensure that the document "accurately reflects the sentence the trial court intended." *State v. Healy*, 157 Wn. App. 502, 516, 237 P.3d 360 (2010).

CONCLUSION

We affirm Nicholas Allemand's and Serena Ford's convictions for second degree theft and first degree trafficking of stolen property. Nevertheless, we remand to the trial court to resentence Ford and Allemand in conformance with our opinion.

A majority of the panel has determined this opinion will not be printed in the

23

No. 32560-1-III; 32456-7-III
*State v. Allemand; State v. Ford*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.