IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77355-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| L.C. JOHNSON, | ) | |
| | ) | FILED: March 11, 2019 |
| Appellant. | ) | |

VERELLEN, J. — L.C. Johnson appeals his conviction for one count of first degree assault and one count of second degree assault, both with firearm enhancements. He argues the State failed to prove he intended to inflict great bodily harm. We conclude sufficient evidence supports the conviction. Johnson also contends the trial court erred in refusing to instruct the jury on the lesser included offense of fourth degree assault. But the evidence did not support an inference that the lesser offense was committed to the exclusion of the charged offense. Additionally, the trial court did not err in concluding that it lacked discretion to impose an exceptional downward sentence. Claims raised in Johnson's statement of additional grounds are unpersuasive. Therefore, we affirm.

## FACTS

L.C. Johnson lived in an apartment complex in Kent with his wife and children. One day in late December 2015, Johnson drove home and found Christopher Medina's black Mustang parked in Johnson's parking space. Medina and his friend Noe Aparicio, both age 18, were sitting in the car smoking marijuana and listening to music. Johnson parked directly in front of Medina's car and walked to his apartment. When Johnson returned, he discovered that the young men had thrown eggs and dog feces at his car in retaliation for blocking the car. Johnson went looking for Medina and Aparicio. A fistfight ensued, and Johnson was injured.

Several weeks later, on February 6, 2016, Johnson and his wife and children left their apartment and got into their car. Aparicio and Medina were parked in Aparicio's mother's parking spot, listening to music and smoking marijuana. This time, Medina was in the driver's seat and Aparicio was in the passenger seat. The car windows were rolled down to air out the smoke.

As Johnson drove past, he saw Medina making hand gestures at him. Johnson reversed and stopped within 10 or 12 feet of Medina's car. Johnson got out of his car and walked towards the passenger side of Medina's car with a gun in his hand. Medina said, "Oh shit. He has a gun,"[1] and jumped out of the car. Aparicio felt trapped, so he hunched down, held up his left hand to block his face,

---

[1] Report of Proceedings (RP) (Feb. 15, 2017) at 488.

and closed his eyes. Johnson said "I ain't playing."[2] Then Medina and Aparicio heard a gunshot.

Medina ducked when he heard the gunshot. Then he noticed that Aparicio was bleeding. The bullet had grazed Aparicio's left index finger and the left side of his temple and forehead. Medina shouted, "You shot him!"[3] Johnson got into his car and drove away. He returned without the gun and tried to get into Medina's car, saying he forgot something. Medina rolled up the windows and repeatedly shoved Johnson. Johnson then returned to his car and drove away. Medina and Aparicio denied possessing any weapons that day.

Witness Valentina Miroshnyk was in her car chatting with a relative in the parking lot when she heard a gunshot. She saw Johnson get out of his car with a gun in his hand and shoot at two people in the Mustang. She heard two shots, then heard someone scream "You got him!"[4] Miroshnyk witnessed these events from approximately 10 or 15 feet away.

Miroshnyk's cousin Ruvim Rymaruk was inside when he heard a noise "like loud fireworks."[5] He ran outside and heard someone standing near the Mustang scream "You shot him."[6] Rymaruk saw a gun in Johnson's hand. Rymaruk pulled out his phone and began recording video. Johnson got in his car and drove away,

---

[2] Id. at 447.
[3] Id. at 490.
[4] RP (Feb. 14, 2017) at 252.
[5] Id. at 276.
[6] Id. at 277.

then returned without the gun and approached the Mustang. Rymaruk heard Johnson say, "My bad, man. Let me just see if he's okay."[7] Rymaruk then witnessed "some pushing and shoving."[8]

Police detectives found a defect in the roof of Medina's car, directly above the driver's seat. The defect appeared to be the exit hole of a bullet. Police searched but did not find a firearm or any bullets or shell casings. A police detective subsequently called Johnson to "make sure the gun was off the street."[9] Johnson responded that the gun was "100 percent off the street."[10]

At trial, Johnson claimed did not have a gun at all that day and did not use force against anyone. Johnson testified he thought Medina and Aparicio were flashing a weapon at him. Johnson's handgun had been stolen from his car in March 2015, and he wanted to see if they had it. Johnson said Medina and Aparicio pushed him around, then he returned to his car and drove away. Johnson's friend Kai Cornyn, who arrived on the scene after Aparicio was shot, testified that he saw Johnson being shoved. Johnson also said Miroshnyk and Rymaruk had ongoing ill will toward him that motivated them to give false testimony.

---

[7] Id. at 284.
[8] Id. at 284-85.
[9] RP (Feb. 15, 2017) at 536.
[10] Id. at 537.

The State charged Johnson with one count of first degree assault and one count of second degree assault, both with firearm enhancements. A jury found Johnson guilty as charged.

The sentencing court denied Johnson's request for an exceptional sentence below the standard range. It imposed a sentence on the low end of the standard range consisting of 111 months for the first degree assault conviction, to be served concurrently to a term of 12 months plus one day for the second degree assault conviction. The court further concluded that it lacked discretion to impose an exceptional sentence regarding the firearm enhancements. Accordingly, the court imposed two mandatory firearm enhancement terms of 60 months and 36 months, to be served consecutively to each other and to the base sentence, for a total of 207 months of confinement.

## ANALYSIS

### *Sufficiency of the Evidence*

Johnson argues the State did not prove beyond a reasonable doubt that he intended to inflict great bodily harm because it did not prove he had a firearm or shot at anyone with it.

In analyzing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found elements of the crime beyond a reasonable doubt.[11]

---

[11] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Circumstantial and direct evidence are equally reliable.[12] We defer to the jury on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence.[13]

The crime of first degree assault requires proof that the defendant, with intent to inflict great bodily harm, assaulted another with a deadly weapon.[14] "Great bodily harm" means "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ."[15] Intent to commit a crime may be inferred from conduct, facts, and circumstances that plainly indicate the defendant's intent as a matter of logical probability.[16]

Johnson argues the State's evidence fails to show he intended to inflict great bodily harm because Aparicio's injuries were merely superficial. Johnson suggests that if he intended to inflict great bodily harm, he would have aimed better and fired more than one shot. Johnson further contends the triviality of his prior dispute with the young men, as well as his history of community involvement,

---

[12] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[13] State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992), abrogated on other grounds by Matter of Pers. Restraint of Cross, 180 Wn.2d 664, 327 P.3d 660 (2014).

[14] RCW 9A.36.011(1)(a); State v. Elmi, 166 Wn.2d 209, 214-15, 207 P.3d 439 (2009).

[15] RCW 9A.04.110(4)(c).

[16] State v. Bergeron, 105 Wn.2d 1, 20, 711 P.2d 1000 (1985).

suggest that he did not intend to retaliate by inflicting great bodily harm. According to Johnson, the evidence at most suggests he only intended to scare them.

Johnson's argument is unpersuasive. Johnson admittedly remained angry about the recent vandalism incident. The State's evidence indicated that Johnson said, "I ain't playing" as he approached Medina's car and fired a handgun at close range through the open passenger window where Aparicio was sitting. The bullet grazed Aparicio's head and finger. It could easily have killed him had he not ducked in time. Contrary to Johnson's argument in his reply brief, when viewed in the light most favorable to the State, the testimony of Medina and Aparicio provides sufficient evidence that Johnson approached the car armed with a gun and fired the gun in the direction of Aparicio, resulting in a bullet grazing Aparicio while he was sitting in the car. The superficial nature of Aparicio's injuries does not lead to a logical inference that Johnson's actions were meant only to scare the young men.[17]

Viewed in the light most favorable to the State, the evidence is sufficient to prove beyond a reasonable doubt that Johnson intended to inflict great bodily harm.

---

[17] See State v. Woo Won Choi, 55 Wn. App. 895, 907-08, 781 P.2d 505 (1989) (evidence that defendant, following a prior altercation, fired shot through open car window at close range that would have hit victim's head had he not ducked was sufficient to satisfy intent element of former first degree assault statute).

*Lesser Included Offense Instruction*

Johnson contends the trial court abused its discretion when it refused to instruct the jury on the lesser included offense of fourth degree assault. Specifically, he argues that there was evidence he engaged only in a shoving match with the young men.

When appropriate, defendants have a statutory right to have lesser degree offenses presented to the jury.[18] "'A defendant is entitled to an instruction on a lesser included offense when (1) each of the elements of the lesser offense is a necessary element of the charged offense and (2) the evidence in the case supports an inference that the lesser crime was committed.'"[19] The first prong of this test is the "legal prong" and the second is the "factual prong."[20] The legal prong "incorporates the constitutional requirement of notice," and the factual prong "incorporates the rule that each side may have instructions embodying its theory of the case if there is evidence to support that theory."[21]

Here, the trial court concluded the evidence did not support an instruction on fourth degree assault. Because this decision was based on a factual determination, it is reviewed for abuse of discretion.[22] We review the evidence in

---

[18] State v. Tamalini, 134 Wn.2d 725, 728, 953 P.2d 450 (1998).

[19] State v. Henderson, 182 Wn.2d 734, 742, 344 P.3d 1207 (2015) (quoting State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)).

[20] State v. Berlin, 133 Wn.2d 541, 546, 947 P.2d 700 (1997).

[21] Id.

[22] State v. Condon, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015).

the light most favorable to the party requesting the instruction.[23] If substantial evidence in the record supports a rational inference that the defendant committed only the lesser offense to the exclusion of the greater offense, the factual prong is satisfied.[24]

Johnson was charged with first degree assault and second degree assault. A person is guilty of assault in the first degree if "he or she, with intent to inflict great bodily harm; (a) [a]ssaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death."[25] A person is guilty of assault in the second degree "if he or she, under circumstances not amounting to assault in the first degree: (a) [i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm."[26]

Johnson requested that the jury be instructed on the lesser included offense of fourth degree assault. A person commits assault in the fourth degree "if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another."[27]

Here, viewing the evidence in the light most favorable to Johnson, the evidence does not support an inference that Johnson committed fourth degree assault. At trial, Johnson's theory was that he was not carrying a weapon and did

---

[23] State v. Wade, 186 Wn. App. 749, 772, 346 P.3d 838 (2015).

[24] State v. Fernandez-Medina, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000).

[25] RCW 9A.36.011(1)(a).

[26] RCW 9A.36.021(1)(a).

[27] RCW 9A.36.041.

not use force against anyone that day. If believed, this theory would require the jury to acquit Johnson on both the charged offenses and the lesser included offense. "Where acceptance of the defendant's theory of the case would necessitate acquittal on both the charged offense and the lesser included offense, the evidence does not support an inference that only the lesser was committed."[28] Moreover, there was no evidence from witness testimony or on the phone video exhibit that Johnson shoved anyone. The evidence does not support an inference that Johnson committed fourth degree assault. The trial court did not abuse its discretion in refusing to give the lesser included instruction.

### Exceptional Downward Sentence

Johnson argues that the sentencing court erred in concluding that it lacked discretion to allow his firearm enhancements to run concurrently rather than consecutively to each other and to the base sentence.

"The structure of the SRA is that a sentencing court calculates a standard range sentence by applying the defendant's offender score with the seriousness level of a crime. The court then adds any enhancements to a given base sentence."[29] "[F]ixing penalties for criminal offenses is a legislative, and not a judicial, function."[30]

---

[28] State v. Speece, 56 Wn. App. 412, 419, 783 P.2d 1108 (1989), affirmed, 115 Wn.2d 360, 798 P.2d 294 (1990).

[29] Matter of Post Sentencing Review of Charles, 135 Wn.2d 239, 254, 955 P.2d 798 (1998).

[30] State v. Manussier, 129 Wn.2d 652, 667, 921 P.2d 473 (1996).

RCW 9.94A.533(3) governs adjustments to standard sentences relating to firearm enhancements:

> The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement.

RCW 9.94A.533(3)(e) additionally provides:

> Notwithstanding any other provision of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.

In State v. Brown, the Washington Supreme Court held that this "absolute language" deprives a sentencing court of discretion to impose an exceptional sentence regarding deadly weapon enhancements.[31] The Brown court reasoned as follows:

> While Brown's arguments foster preservation of judicial discretion in sentencing, RCW 9.94A.310(4)(e) clearly provides that an offender's sentence cannot be reduced below the times specified in RCW 9.94A.310(4)(b). If RCW 9.94A.310(4)(e) is to have any substance, it must mean that courts may not deviate from the term of

---

[31] 139 Wn.2d 20, 29, 983 P.2d 608 (1999), overruled on other grounds, State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017)).

confinement required by the deadly weapon enhancement. This case is remanded for resentencing consistent with our decision.[32]

The legislature has chosen not to amend this statutory language since Brown was decided nearly 20 years ago. "'This court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision.'"[33]

Johnson, relying primarily on two subsequent Washington Supreme Court decisions, argues that the sentencing court has discretion to depart from mandatory consecutive firearm enhancement sentences despite statutory language indicating consecutive sentences are required. This argument is not persuasive.

In In re Personal Restraint of Mulholland, the Washington Supreme Court held that the plain language of RCW 9.94A.535 and RCW 9.94A.589 authorizes concurrent exceptional sentences to be imposed for multiple serious violent offenses when the court identifies substantial and compelling reasons to do so, even though RCW 9.94A.589(1)(b) states that sentences for such crimes must be consecutive.[34] In State v. McFarland, the Washington Supreme Court similarly

---

[32] Id. Brown interpreted a previous version of this statute, but the language quoted in support of its holding remains the same. See former RCW 9.94A.310(4)(e) (1999).

[33] State v. Otton, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (quoting City of Federal Way v. Koenig, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)).

[34] 161 Wn.2d 322, 329-30, 166 P.3d 677 (2007).

held that RCW 9.9A.535 and RCW 9.94A.589(1)(c) permit the sentencing court to impose exceptional concurrent sentences for firearms-related convictions.[35]

Nothing in these cases overrules or undermines Brown. They do not address RCW 9.94A.533, the firearm enhancement statute at issue in this case. The sentencing court did not err in adhering to Brown and concluding that it lacked discretion to depart from mandatory consecutive firearm enhancement sentences.

*Statement of Additional Grounds*

In his statement of additional grounds for review, Johnson argues the evidence was not sufficient to uphold the conviction, the jury misunderstood the instructions, and the jury was not impartial. These arguments lack merit.

*Sufficiency of the Evidence.* Johnson argues the evidence was insufficient to uphold the conviction. In particular, he contends the State did not prove beyond a reasonable doubt that he assaulted anyone with a deadly weapon. As addressed previously in this opinion, there was sufficient evidence for a rational jury to convict Johnson beyond a reasonable doubt.

*Jury Instructions.* Johnson does not assign error to the jury instructions. Rather, he argues that the jury must have misunderstood the instructions because it returned a guilty verdict on all charges despite evidence supporting his version of events. But an essential function of the jury as fact finder is to discount theories which it determines to be unreasonable.[36] Absent evidence to the contrary, juries

---

[35] 189 Wn.2d 47, 54-55, 399 P.3d 1106 (2017).

[36] State v. Bencivenga, 137 Wn.2d 703, 708-09, 974 P.2d 832 (1999).

are presumed to follow instructions.[37] "[A] court must not intrude into the jury deliberations to determine what the jury has decided or why, or how the jury viewed the evidence."[38] Johnson has not shown the jury misunderstood or failed to follow the instructions.

*Impartial Jury.* Criminal defendants have a constitutional right to an unbiased and unprejudiced jury, free of disqualifying jury misconduct.[39] But Johnson points to no evidence of disqualifying juror misconduct. Rather, he contends the jury was biased because it agreed with the alleged victims' testimony and returned a verdict against him. As previously discussed, the evidence was sufficient to support the verdict. Johnson has not shown that the verdict was marred by bias or prejudice.

Affirmed.

WE CONCUR:

---

[37] State v. Lamar, 180 Wn.2d 576, 586, 327 P.2d 46 (2014) (quoting State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013)).

[38] Id. at 587.

[39] State v. Whitaker, 6 Wn. App. 2d. 1, 33, 429 P.3d 512 (2018) (quoting State v. Tigano, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991)).